IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

```
UNITED STATES OF AMERICA,    )
                             )
          Plaintiff,         )
                             )
v.                           )     Case No. CR-21-049-RAW
                             )
TYLER PRESLEY,               )
                             )
          Defendant.         )
```

**FINDINGS AND RECOMMENDATION**

On July 19, 2021, this Court conducted a hearing with regard to Defendant's Motion to Suppress (Docket Entry #25). The matter was referred by United States District Judge Ronald A. White, who presides over this case. The hearing was attended by counsel of record and the Defendant.

On May 14, 2020, Defendant Tyler Presley ("Presley") was arrested by Agent Travis Salsbury and others on the District 27 Drug and Violent Crime Task Force. He had previously been charged with Murder in the First Degree in the District Court in and for Adair County, Oklahoma. Defendant was transported to the Adair County Jail by Agent Salsbury. Since the investigation into Defendant's alleged offense was being conducted by the Oklahoma State Bureau of Investigation ("OSBI"), members of the Task Force did not advise Defendant of his rights under Miranda and did not attempt to interrogate him.

Agent Salsbury testified that Defendant attempted to speak to

law enforcement, allegedly stating that he "didn't know it was Brandon when he shot through the door."

On the same day while at the jail, Defendant met with Special Agents Kevin Lanham and Christian Goode after his arrest. He was handcuffed and shackled, sitting at a table with the agents on the other side. Agent Lanham testified that Defendant did not appear to be under the influence during their encounter. He also testified that the officers did not threaten, strike or promise any benefits in exchange for his statement.

Defendant entered the room and mentioned he was told he could go to the bathroom later. Agent Lanham made introductions, making clear that the two Agents worked for the OSBI and were police officers. He introduced himself as the case agent and lead investigator in Defendant's case and that he did not know anything about Defendant other than what he had read. The transcript of the exchange between Defendant and the Agents relevant to the subject Motion is as follows:

> Agent Lanham: There's a lot of important decisions that are going to be made today which are going to affect the rest of your life. And I'm going to make those decisions in the next couple of days. It's not fair as a man to have decisions made against you without getting your side of the story. It's just not fair to you.
>
> Defendant: Yeah, I thought it would be

2

like . . . what's it called? . . . Manslaughter or . . .

Agent Lanham: Yeah, and we'll talk about that. But without your side of the story. . .

Defendant: Yeah, . . . it's like I tell Jason, I didn't know what the fuck to do, where to go . . . [unintelligible].

Agent Lanham: Yeah, and we'll get into that, so. . . . what we want to do is we want to give you the opportunity to tell us your point of view, ok? Is that something you're interested in?

Defendant: Yeah.

Agent Lanham: And I'm going to tell you . . . I'm going to read you your rights because we have to. You've probably seen this in the movies. Maybe you've heard it. It's just what the police do these days. So, just kind of bear with me. I'm going to read them right off this form and then I'm going to give you the form to look at so you don't think I'm trying to trick you or anything, OK?

You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions and to have him or her with you during questioning. If you cannot afford to hire a lawyer, one will be appointed to you before any questions if you wish. If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time. Do you understand all those? I'm sure you've probably heard them before.

Do you have any questions about any of those?

3

Defendant: Uh, I have asked before, but like I say, I do need to talk to my lawyer first, you know, whatever. Uh, it's the same thing, right?

Agent Lanham: What do you mean? I don't, I don't, I don't understand your question.

Defendant: If I would rather talk to you all after I talk to my lawyer first would that be the same or do I need to [unintelligible] me wasting your time, would affect me at all like [unintelligible] court [unintelligible].

Agent Lanham: So . . .

Defendant: I, I'm like, but I don't know who my lawyer is, yeah . . . you know what I'm saying? I'm confused on that.

Agent Lanham: Okay. So, I, I can't give you legal advice and, and, let's be honest, the legal advice that I would give you would probably be to my benefit, not to your benefit. I'm just, I'm a straight, straight shooter, alright? I'm not going to BS you.

Defendant: I'm not either. I just . . .

Agent Lanham: Okay. So, you know, if, if I were to sit here and tell you something particular, you should take that with a little bit of suspicion because it'd be like well this guy wants, you know, I, I don't care if it looks good for me or not, I'm just gonna be straight with you.

Defendant: Now, I understand you all coming from somewhere else . . .

Agent Lanham: yeah, so we're, we're just here to get your side of the story. You

4

have the right to speak with an attorney at any time. Okay, before or after, it's your call, alright? Just kind of like I read to you. Um, the last point . . . you can decide to talk to us and then if just change your mind in the middle of it you can stop. It's up to you. Is, is when we talk to you gonna affect the, our, you know, our view of you, no, not necessarily. But I can tell you that decisions will be made before then that, that, that may have an effect on you. We're gonna make decisions on what we know right now with or without your side of the story. Um,

Defendant: Totally understand that . . .

Agent Lanham: So, ah, it's been my experience that lawyers are just gonna blanket tell people don't talk to the police. That's just been my experience. Now, you have that right, nobody's trying to pressure you. I'm just telling you that's been my experience. I mean you've been around the block, I assume, you've probably heard that advice, too.

Defendant: My deal is, it ain't going to fucking hurt me to tell you my side of the story, I mean . . .

Agent Lanham: Okay. So, so you want to talk to us?

Defendant: Is it going to be a statement? Is it going to be . . .?

Agent Lanham: It's going to be a conversation between me and you.

Defendant: Afterwards, you're not going to ask me to sign something.

Agent Lanham: The only thing I'm going to ask you to sign is this that you understand that. That's the only thing I'm going to ask

5

>    you to sign.  I'm not going to ask you to
>    write anything.  I'm not going to ask you to
>    do any of that.  I just want us three to have
>    a conversation about what happened.  Your
>    point of view.
>
>    Defendant:  Get that out of the way so
>    I'm not paranoid or weird.
>
>    Agent Lanham:  So, you're good with
>    talking to us?
>
>    Defendant:  Yeah.  I'm here to tell you
>    my side of the story.  I need to . . .
>
>    Agent Goode:  And you can stop at any
>    time.  Once you sign it's not 'we got you.'[1]

Agent Lanham read the Miranda waiver form to Defendant.[2] Defendant then signed the form.  Defendant then proceeded to answer the Agents' questions and made various statement to them concerning the events surrounding the charges against him.

On April 14, 2021, Defendant was indicted in a four count Indictment alleging (1) Murder in Indian Country in Perpetration of Kidnapping in violation of 18 U.S.C. §§ 1111(a), 1151, and 1153; (2) Kidnapping in Indian Country Resulting in Death in violation of 18 U.S.C. §§ 1201(a)(2), 1151, and 1153; (3) Use, Carry, Brandish, and Discharge a Firearm During and In Relation to a Crime of Violence in violation of 18 U.S.C. § 924(j); and (4) Interstate

---

[1] The recording of the entire interrogation is contained in Government's Exhibit No. 1, which was admitted at the hearing.
[2] See Government's Exhibit No. 2.

Transportation of a Stolen Vehicle in violation of 18 U.S.C. §2313.

Law enforcement is not required to administer Miranda[3] warnings to everyone whom they question, only those who are subjected to custodial police interrogation. United States v. Erving L., 147 F.3d 1240, 1246 (10th Cir. 1998)(citations omitted). A person is not "in custody" unless his "freedom of action is curtailed to a 'degree associated with formal arrest.'" Id. citing Berkemer v. McCarty, 468 U.S. 420, 440 (1984). The perspective for determining custody is whether "a reasonable [person] in the suspect's position would have understood his situation . . . as the functional equivalent of formal arrest." Id. at 1246-47 citing Berkemer, 468 U.S. at 442.

Clearly, Defendant was under arrest and in custody at the time of the interrogation by law enforcement. Providing a Miranda advisement was entirely appropriate and required.

In order to invoke the right to consult with legal counsel, a defendant must make the request "unambiguously" in order for the requirement for law enforcement to cease questioning to be invoked. Berghuis v. Thompkins, 560 U.S. 370, 381, 130 S. Ct. 2250, 2259, 176 L. Ed. 2d 1098 (2010) citing Davis v. United States, 512 U.S.

---

3 Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). Defendant initially made it clear that he was invoking his right to consult with legal counsel prior to speaking with the Agents. Almost immediately after invoking this right, however, Defendant asked Agent Lanham a question concerning the effect of this invocation. Agent Lanham rightly asked for clarification to his question as it is not entirely clear from the recording of the interview what Defendant was asking. Contrary to Defendant's contention, Agent Lanham's question was not the type of ruse or pretense to feign an inability to hear Defendant in an attempt to draw incriminating statements from him nor would a reasonable officer consider that Defendant's question pertained to invoking his right to counsel.[4]

Upon clarification by Defendant, it is apparent that he was concerned about the effect that invoking his right to counsel would have upon the Agents' view of his guilt. Agent Lanham responded to Defendant's inquiry in a reasonable manner in stating he could not provide legal advice and any advice he would provide should be looked upon with distrust by Defendant. This was not a furthering

---

4 *See e.g.* United States v. Tennison, 2016 WL 9777155, at *2 (D.N.M. June 9, 2016)("a reasonable law enforcement officer in her place would have understood Defendant's question, 'Will you appoint me a lawyer?' as an unequivocal request for appointed counsel as referred to in the advice of rights form.")

of the interrogation or a violation of Miranda and its progeny. He in no way encouraged Defendant to not seek legal counsel or to make incriminating statements. Defendant's question was not removed from the subject matter of the investigation – he specifically inquired about the effect of his speaking to the Agents with or without counsel.5 It was then Defendant who reengaged with the Agents by stating, "My deal is, it ain't going to fucking hurt me to tell you my side of the story, I mean ...." The Supreme Court established the unequivocal requirement for law enforcement to cease interrogation upon the invocation of the right to counsel with a single exception. The Court stated, " an accused, . . . , having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, **unless the accused himself initiates further communication, exchanges, or conversations with the police.**

---

5 See Oregon v. Bradshaw, 462 U.S. 1039, 1045–46, 103 S. Ct. 2830, 2835, 77 L. Ed. 2d 405 (1983)("Although ambiguous, the respondent's question in this case as to what was going to happen to him evinced a willingness and a desire for a generalized discussion about the investigation; it was not merely a necessary inquiry arising out of the incidents of the custodial relationship. It could reasonably have been interpreted by the officer as relating generally to the investigation. That the police officer so understood it is apparent from the fact that he immediately reminded the accused that 'you do not have to talk to me,' and only after the accused told him that he 'understood' did they have a generalized conversation. . . . On these facts we believe that there was not a violation of the Edwards rule.")

9

Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S. Ct. 1880, 1885, 68 L. Ed. 2d 378 (1981)(emphasis added by this Court). Without urging or compulsion from law enforcement, Defendant initiated further communication with the Agents, unequivocally expressing his wish to tell his side of the story – a clear repudiation of his previous invocation of a right to consult with counsel before making a statement and responding to law enforcement's questions.

Defendant's statement which reengaged with law enforcement was clearly voluntary and offered of his own volition. "The determination of voluntariness is based on the totality of the circumstances. Relevant circumstances embrace both the characteristics of the accused and the details of the interrogation. Such factors include (1) the age, intelligence, and education of the defendant; (2) the length of detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subject to physical punishment." United States v. Lopez, 437 F.3d 1059, 1063-64 (10th Cir. 2006) citing United States v. Toles, 297 F.3d 959, 965-66 (10th Cir. 2002). The burden is borne by the Government to demonstrate by a preponderance of the evidence that a particular statement is voluntary. Id. citing

Missouri v. Seibert, 542 U.S. 600, 608 n.1 (2004).

Nothing in the record indicates that Defendant's age, intelligence, or education prevented him from understanding his circumstances or the consequences of his actions. Indeed, the recording of the interview demonstrates an acquaintance with the legal process.

The second and third considerations as to whether the statement provided was voluntary have no impact in this case. Defendant had recently been arrested and the interrogation was just beginning.

The fourth factor to be considered weighs in favor of law enforcement. Defendant was advised of his Miranda rights.

The fifth and final consideration involves whether a defendant was subjected to physical punishment. Defendant was not.

Considering the totality of the circumstances, this Court cannot conclude Defendant was coerced into giving his statement or revoking his initial invocation of his right to seek the advice of legal counsel. His statement reengaging with law enforcement demonstrated a voluntary desire to make a statement and continue with the interrogation without first consulting a lawyer.

IT IS THEREFORE THE RECOMMENDATION OF THIS COURT that Defendant's Motion to Suppress (Docket Entry #25) be **DENIED.**

The parties are herewith given fourteen (14) days from the date of the service of these Findings and Recommendation to file any objections with the Clerk of the court. The failure to object to the Findings and Recommendation within fourteen (14) days will preclude appellate review of the judgment of the District Court based on such findings.

IT IS SO ORDERED this 27th day of July, 2021.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE